IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CORNELIUS BROWN, | ) | 8:14CV298 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DEPT. OF HEALTH & HUMAN SVS., TI LINN BOUER, JOHN KROLL, LORI STRONG, DIANNA MASTNY, MATTHEW POKORNY, KRISTINE BOE SIMMONS, and NANCY WRAGGE, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on a Motion to Dismiss (Filing No. 39) Plaintiff Cornelius Brown's Amended Complaint. When Brown filed his Amended Complaint, he was confined to inpatient treatment at the Norfolk Regional Center ("NRC") in Norfolk, Nebraska. The Motion to Dismiss was filed by Bob Gibson, the director of the Nebraska Department of Health and Human Services ("NDHHS"), and the following staff of the NRC: TiLnne Bouer, a facility operating officer; Kristine Simmons, an associate facility operating officer; John Kroll, the director of nursing, and Lori Strong, Dianna Mastny and Nancy Wragge, nurses at the NRC (together, "State Defendants").

State Defendants argue Brown's claims for damages against them in their official capacities are barred by sovereign immunity. In addition, they argue Gibson, Bouer, Simmons, and Kroll are entitled to qualified immunity. Finally, they argue Brown failed to state cognizable constitutional claims against Wragge, Mastny, and Strong. (Filing No. 40.) For the reasons that follow, the court will dismiss all of Brown's claims except his retaliation claims against Strong and Mastny in their individual capacities.

## BACKGROUND

Brown filed his original Complaint (Filing No. 1) on September 30, 2014. He filed two Supplements (Filing Nos. 14 and 15) to his Complaint on November 4 and December 2, 2014. Brown, a black male, alleged staff at the NRC failed to address patients' use of racially derogatory language. In addition, he alleged two NRC staff, Strong and Mastny, retaliated against him by taking steps to ensure he could not advance in his sex-offender treatment program when they learned Brown had filed a civil action in this court.

The court conducted a pre-service screening of the Complaint and Supplements on December 9, 2014. (Filing No. 16.) The court dismissed all of Brown's claims except for the retaliation claims lodged against Strong and Mastny.

Defendants Strong and Mastny moved to dismiss Brown's claims against them on January 12, 2015. (Filing No. 23.) However, thereafter, Brown filed a number of motions seeking to further supplement his claims. On April 7, 2015, the court issued an order mooting all of the parties' filings and ordering Brown to file one comprehensive amended complaint alleging all of his claims against all of the defendants. (Filing No. 36.) Brown filed his Amended Complaint (Filing No. 37) on April 15, 2015. The court considers Brown's Amended Complaint the only operative complaint in this matter.

State Defendants moved to dismiss the Amended Complaint on May 6, 2015. (Filing No. 39.) Brown filed a Response (Filing No. 41) to the motion, to which State Defendants filed a Reply (Filing No. 43).

## STANDARD OF REVIEW

State Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). A motion under Rule 12(b)(1) allows the court to address

the threshold question of jurisdiction, as judicial economy demands that the issue be decided at the outset rather than deferring it until trial. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). The party asserting jurisdiction bears the burden of proving that jurisdiction is proper. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

State Defendants have also moved to dismiss this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in order to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when a plaintiff pleads facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Pro se complaints "must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (internal quotation marks and citations omitted).

## DISCUSSION

Brown's Amended Complaint alleges various constitutional claims against a patient at the NRC, seven state employees, and the NDHHS. (*See* Filing No. 37). Brown has sued the seven state employees in their official and individual capacities. (Filing No. 37 at CM/ECF p. 2.) The court will address Brown's claims in the paragraphs that follow.

### A. Claims Against a Fellow Inpatient

Brown alleged Matthew Pokorney, a fellow inpatient, made racially derogatory comments and "defaming statements" about him. (Filing No. 37 at CM/ECF pp. 9-10.) Brown seeks money damages against Pokorney for racial discrimination and defamation of character.

3

Despite Brown's conclusory statement to the contrary, it is apparent from Brown's allegations that Pokorney is a private party and, therefore, not subject to suit under 42 U.S.C. § 1983. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982) (reiterating that, for a defendant to be subject to suit under 42 U.S.C. § 1983, that defendant's actions must be fairly attributable to the state). Moreover, for the reasons explained in the court's pre-service screening of Brown's Complaint and Supplements, Brown's allegations fail to state a claim for relief under Nebraska state-law against Pokorney. (*See* Filing No. 16 at CM/ECF pp. 6-7.) For these reasons, Brown's claims against Pokorney will be dismissed.

B.   **Sovereign Immunity**

State Defendants argue the doctrine of sovereign immunity bars Brown's claims for damages against them in their official capacities. The court agrees.

The Eleventh Amendment to the United States Constitution provides states, state agencies, and state officials acting in their official capacities with immunity from suits brought by citizens of other states and from suits brought by a state's own citizens. *See Hadley v. North Arkansas Cmty. Technical Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996), *cert. denied*, 519 U.S. 1148 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). An exception to this immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), which permits prospective injunctive relief against state officials for ongoing federal law violations. This exception does not apply to cases involving requests for purely retroactive relief. *Green v. Mansour*, 474 U.S. 64 (1985).

Brown, in part, seeks monetary relief for alleged past violations of federal law. There is nothing in the record before the court showing that the State of Nebraska

4

waived, or that Congress overrode, sovereign immunity in this matter. Thus, Brown's damages claims against the NDHHS and State Defendants sued in their official capacities are barred by the Eleventh Amendment.

### C. Claims Against Gibson, Bouer, Simmons and Kroll

Brown's claims against Gibson, Bouer, Simmons, and Kroll are premised on their failure to take some action in response to Brown's grievances and complaints. State Defendants argue Gibson, Bouer, Simmons, and Kroll are entitled to qualified immunity as to Brown's claims against them in their individual capacities. The court agrees.

At the pleading stage, an individual defendant official is entitled to qualified immunity "unless [the] plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). A district court employing the qualified immunity analysis may answer either question first, and may begin and end with either question. *See, e.g.*, *Sisney v. Reisch*, 674 F.3d 839, 844, 847 (8th Cir. 2012).

A defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).

Here, Brown has not pled facts showing Gibson, Bouer, Simmons, and Kroll violated any statutory or constitutional right. The state, and its officials, have a duty imposed by the Substantive Due Process Clause of the Fourteenth Amendment to provide a "reasonably safe environment" for individuals involuntarily confined in a state mental health facility. *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006) (quoting *Beck v. Wilson*, 377 F.3d 884, 890 (8th Cir. 2004). "To recover under

5

§ 1983 for a breach of that constitutional duty, a plaintiff must prove that a state official either intentionally violated the duty (such as criminal assault by a staff member) or was deliberately indifferent to a known excessive risk to patient safety (such as assault by another patient)." *Id.*

Here, Brown's allegations do not support a claim that state officials denied him a reasonably safe environment. While Brown's alleged exposure to racial slurs is unfortunate, name calling and use of offensive language by other patients committed to Brown's facility does not state a claim of constitutional dimension. There are no facts alleged to suggest officials were deliberately indifferent to a known risk to Brown's safety.

Moreover, Brown's allegations that Gibson, Bouer, Simmons, and Kroll failed to respond to his grievances and complaints do not state a violation of Brown's constitutional rights. *See Merryfield v. Jordan*, 431 Fed. App'x 743, 749 (10th Cir. 2011) (holding civilly-committed sex offender lacked any federal constitutional right to an adequate grievance procedure); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that allegations regarding actions of prison officials in handling prisoner's grievances, and regulating his access to his attorney, were insufficient to state a constitutional claim); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the processing of their grievances, such as would support § 1983 claim for prison official's failure to pick up his completed grievance forms). Thus, it cannot be said that a reasonable official in these officials' position would have understood they were violating a constitutional right by failing to respond to Brown's grievances and complaints. As such, they are entitled to qualified immunity.

**D.     Failure-to-Redirect Claims Against Strong, Mastny and Wragge**

Brown alleged Strong, Mastny, and Wragge failed "to redirect" patients when they made racially derogatory statements. Specifically, he alleged Strong "heard some

6

of the racial slurs" made by other patients at NRC and "at no time did she attempt to redirect the patient[s]." (Filing No. 37 at CM/ECF p. 7.) Further, Brown alleged Mastny "was present during another patient's racial comments and slurs" and "did nothing to redirect [that] patient." (Filing No. 37 at CM/ECF p. 8.) Finally, Brown alleged Wragge witnessed a discriminatory exchange between Brown and Pokorney but "failed to redirect Pokorney for his statement." (Filing No. 37 at CM/ECF p. 8.)

As stated above, while Brown's alleged exposure to racial slurs is unfortunate, the use of offensive language by other patients committed to Brown's facility does not state a claim of constitutional dimension, nor does Strong, Mastny, and Wragge's "failure to redirect" those patients.

### E. Retaliation Claims against Mastny and Strong

Brown alleged a § 1983 retaliation claim against Strong and Mastny. With respect to Strong, he alleged she began retaliating against him after she learned he had complained to the Ombudsman's Office and filed a civil action against her. He alleged she gave him negative marks that resulted in his inability to progress in his treatment. He also alleged Strong made the following statements: (1) "'I am being sued by Cornelius and that is why he's still Level 2,'" and (2) "'People want to sue staff don't move forward.'" (Filing No. 37 at CM/ECF p. 6.) With respect to Mastny, Brown alleged she gave him negative scores on his treatment plan, placed him on privilege suspension, and forwarded negative comments about him to the mental health board after she learned he met with members of the Ombudsman's Office about racial discrimination at the NRC. (Filing No. 37 at CM/ECF pp. 7-8.)

To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in protected activity; (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870 (2004) (citing

*Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002)). Further, "[t]o prevail in an action for First Amendment retaliation, [a plaintiff] must show a causal connection between [the defendant's] retaliatory animus and [the plaintiff's] subsequent injury." *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)).

Brown's allegations of retaliation are plausible. They suggest Strong and Mastny reacted to Brown's complaints to the Ombudsman's Office and his filing of a civil lawsuit by taking steps to prevent him from advancing in his treatment program. Therefore, Brown's retaliation claims against Strong and Mastny in their individual capacities will not be dismissed at this time. The court notes here that Brown's claims for preliminary injunctive relief against Strong and Mastny are now moot in light of Brown's transfer to the Lincoln Regional Center.

## MOTION FOR COUNSEL

Plaintiff filed a Motion to Appoint Counsel. (Filing No. 42.) In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel. The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel[.]" *Id.* (internal citation and quotation marks omitted). No such benefit is apparent here at this time. Thus, the request for the appointment of counsel will be denied at this time.

IT IS THEREFORE ORDERED that:

1. State Defendants' Motion to Dismiss (Filing No. 39) is granted in part and denied in part. Brown's claims against Bob Gibson, TiLnne Bouer, Kristine Simmons, John Kroll, and Nancy Wragge are dismissed in their entirety. Brown's official-capacity claims against Lori Strong and Dianna Mastny are dismissed, as are Brown's "failure-to-redirect" claims against Strong and Mastny. The only claims remaining in

8

this action are Brown's retaliation claims against Strong and Mastny in their individual capacities.

2. Brown's claims against Defendant Matthew Pokorney are dismissed for failure to state a claim in accordance with this court's authority to screen in forma pauperis complaints. *See* 28 U.S.C. § 1915(e).

3. Brown's Motion to Appoint Counsel (Filing No. 42) is denied.

4. Strong and Mastny must answer the Amended Complaint within 14 days in accordance with Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure.

5. The court will enter an order progressing this matter to final disposition following the filing of an answer. Brown's motions seeking discovery in this case (Filing Nos. 46 and 47) are denied. The order progressing this matter to final disposition will provide the parties with a schedule for conducting discovery.

6. The clerk of the court is directed to set the following pro se case management deadline: October 12, 2015: check for answer.

DATED this 29th day of September, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.